**STATE ex BETTS v BOWER et**

Ohio Appeals, 2nd Dist, Madison Co

No 94.   Decided May 16, 1933.

D. M. Richmond, London, and D. H. Jackman, London, for plaintiffs.

John W. Bricker, Attorney General, Columbus, Isadore Topper, Ass't Attorney General, Columbus, and H. H. Crabbe, Prosecuting Attorney, London, for defendants.

BARNES, J.

The above entitled cause is now being determined on appeal from the judgment of the Court of Common Pleas of Madison County, Ohio.

In the court below judgment was rendered for the plaintiff and against the defendants.

While the cause is properly heard de novo in this court, yet by stipulation of counsel in open court it was agreed that the transcript of evidence and pleadings in the court below should constitute the record without the introduction of any other or further evidence.

The prosecuting attorney, as counsel for defendants, trustees of the Madison County Children's Home, files the following pleadings in this court and in the following order:

(1st) Motion to suspend judgment of court below.

(2nd) General demurrer to amended petition of plaintiff.

(3rd) Amended answer. (Tendered).

The attorney general as counsel for the Civil Service Commission of Ohio filed in this court the following pleadings and in the order named:

(1st) Motion to suspend judgment of court below.

(2nd) Answer to plaintiff's amended petition.

The relator prays for injunction restraining the Civil Service Commission of Ohio from certifying payrolls and the County Auditor from issuing warrants to the defendants, Kilgore, as Superintendent and Matron of the Madison County Children's Home, on the claimed ground that the appointment of the Kilgores was illegal.

Comprehensive and exhaustive briefs are presented by attorneys representing the respective parties.

Without waiving questions raised by motions and demurrer either filed in court below or originally in this court, the cause is also submitted on the merits.

From the evidence and admissions in the pleadings, we narrate the following findings of fact and all necessary to a complete understanding and determination of the many intricate legal questions involved.

The relator, Ed Betts, at the time of instituting his action was a taxpayer and resident of Madison County, Ohio and brought the action as such on behalf of himself and other taxpayers.

The relator did not make demand upon H. H. Crabbe, prosecuting attorney of Madison County, as is provided by §2922 GC.

C. C. Crabbe, a partner of the prosecuting attorney advised with the defendants, trustees of the Madison County Children's Home, prepared and presented a communication to the defendant, Civil Service Commission of Ohio urging them to certify a second eligible list; personally appeared before the commission on behalf of the trustees and thereby lent his efforts in securing a second certification by which the Kilgores were finally appointed superintendent and matron respectively.

Counsel for relator in the court below sought to present evidence as to activities on the part of the prosecuting attorney in the interests of the Kilgores but objection being interposed and sustained, we do not have the benefit of this proffered evidence. However, witness, Woosley, on page 29 of record answered "Yes" to a question that the prosecuting attorney did interest himself in getting a waiver from him.

We think the trial court was in error in ruling the answer out and therefore, we will consider this answer along with other evidence as it bears on the exception in §2922 GC authorizing taxpayers suit "Where for any reason the prosecuting attorney cannot bring such action." Prior to the alleged illegal acts Mr. and Mrs. D. G. Kilgore were named as provisional appointees in the position of superintendent and matron of the Madison County Children's Home and are still so acting with the qualification that since September, 1932, it is claimed they held by appointment from a certification of the Civil Service Commission of Ohio. On July 7, 1932, a competitive civil service examination was duly held in London, Madison County, Ohio, for the position of superintendent and matron of said Children's Home. Prior thereto no competitive examination had been held for these positions.

The following persons were successful and graded as follows:

(1) Mr. and Mrs. Raymond Laird ....83.19
(2) Mr. and Mrs. John Houston ...75.65
(3) Mr. and Mrs. T. W. Eagleton ...74.35
(4) Mr. and Mrs. Clarence Woosley .73.57
(5) Mr. and Mrs. E. F. Hodson ....73.85
(6) Mr. and Mrs. Silas Ruff .......72.27
(7) Mr. and Mrs. D. G. Kilgore .....71.92

Thereafter on August 20th, the Civil Service Commission duly certified to the said Children's Home Trustees, Numbers 1, 2 and 3 as standing highest on the eligible list for appointment for superintendent and matron. On request Nos. 5 and 6 waived their position in favor of No. 7, the Kilgores.

The trustees declined to make the appointment from the certified list, Nos. 1, 2 and 3, but sought legal advice as to the ways and means to avoid so doing and thereafter with their counsel, C. C. Crabbe, had numerous audiences with the Commission. On September 2nd, Crabbe acting for the trustees prepared and presented to the Commission a communication signed by all the members of the board of trustees (Plaintiff's Exhibit "E") attaching thereto waivers of the Hodsons and the Ruffs, (Nos. 5 and 6), in favor of the Kilgores, (No. 7) and further stating the Lairds, (No. 1) and

Woosleys, (No. 4) had several small children and by reason thereof they would be unsuitable for appointment. It was urged that a separate eligible list be submitted separating those applicants who have families of small children from those who do not. Thereafter on September 9th, in conformity to such request the Commission certified a second list for appointment containing the names of the Houstons, No. 2, the Eagletons, No. 3 and the Kilgores, No. 7.

The Lairds, No. 1 and the Woosleys, No. 4 had families of small children and were eliminated.

Nos. 5 and 6 had waived in favor of the Kilgores, No. 7. Following the second certification the Kilgores were immediately appointed as superintendent and matron. There is no provision in the Civil Service Law of Ohio, §§486-1 to 486-31 GC inclusive declaring applicants ineligible by reason of having families of small children. The rules and regulations of the Commission do not make any such inhibition.

The trustees in their request for certification, prior to the examination did not ask that the Commission promulgate a special order making ineligible applicants having small children. The advertisement for examination contained no such information.

The applicants in taking the examination were not interrogated as to whether or not they had children.

The following questions of law are involved:

(1) Under the facts of the case could the relator bring the action as a taxpayer without first making written demand on the prosecuting attorney of the county and have his refusal so to do?

(2) Can an action of this character be maintained by a taxpayer under any conditions?

(3) May the Civil Service Commission of Ohio be joined in the action in Madison County, Ohio?

(4) Was the appointment illegal?

(5) May the relator have relief through injunction?

### (1.)

**DEMAND ON PROSECUTING ATTORNEY AS CONDITION PRECEDENT TO BRINGING ACTION BY TAXPAYER.**

Sec 2921 GC specifically empowers the prosecuting attorneys in their respective counties to prosecute actions to restrain the misapplication of the funds of the county.

Sec 2922 GC provides for taxpayers' suit if the prosecuting attorney on written request of such taxpayer fails to institute the proceedings contemplated in §2921 GC.

This same section authorizes taxpayers' suit without written request "Where for any reason the prosecuting attorney cannot bring such action."

The case of **Board of Commissioners of Wood County v Pargilis, 10 C. C., 376** is a possible precedent for taxpayers' suit without request on prosecuting attorney. However, Judge Haynes in commenting observed that such procedure was contrary to his concepts of the law. His contrary holding seems to be based on expediency rather than on principle. Some additional weight may be given to the decision since the Supreme Court affirmed 53 Oh St, 680. However, much of the added weight is lost by reason of the fact that the affirmance was without report.

We are inclined to hold to the rule requiring written notice and refusal as a basis for a taxpayers' suit.

We think the broad and comprehensive language of the legislative enactments make the remedy exclusive. Furthermore our experience of the past years convince us that this statutory procedure has become a fixed and universal rule of practice.

The following are Ohio cases holding to the rule just announced:

**Stolz v Silz, 12 O. Dec. (N.P.), 664.**

**State ex Zumstein, 4 C.C., 268,** affirmed by Supreme Court without report. 30 Bull., 275.

**Brader v French, 90 O. Dec. 202.**

In the instant case the relator admits that no demand was made on the prosecuting attorney to bring the action, but makes allegations of fact and introduces evidence seeking to bring himself under that portion of §2922 GC above quoted. While we think the relator might well have made his written demand and thus eliminated a somewhat doubtful question yet under the evidence as referred to in our statement of facts, we are moved to hold that a reason was shown by the prosecuting attorney should not have instituted the action even if request had been made. An interesting case holding under a somewhat similar state of facts demand not necessary is the following: Burnes v City of Nashville, 221 SW, 828 (142 Tenn., 541).

### (2.)
CAN AN ACTION OF THIS CHARACTER BE MAINTAINED BY A TAXPAYER UNDER ANY CONDITIONS?

Sec 2922 GC provides the general authority for a taxpayers' suit. §2921 GC must be read in connection with §2922 GC in order to have a full understanding of the character and nature of such taxpayers' suit. Among other things we find the right to bring the action whenever money is about to be illegally drawn from the County Treasury.

It is the claim of the relator in the instant case that money is being illegally drawn from the county treasury of Madison County, Ohio and asks injunction to prevent a continuation of these illegal acts.

It is at once obvious that the relator brings himself within the provisions of this language of the statute and would be entitled to the relief provided the proven facts support his petition and provided further that this provision of said §2921 GC is not limited or modified by any other legislative enactment or judicial construction.

Sec 486-29 GC specifically provides that the right of a taxpayer to restrain payment of compensation to any person holding employment in violation of the civil service act shall not be denied by reason of the fact that the employment has been classified.

The plain language of the above section of the Code certainly leaves nothing for construction. The following Ohio cases support our conclusion:

**Green v State Civil Service Commission, 90 Oh St, 252.** The first paragraph of the syllabus reads as follows:

"A taxpayer may maintain an action to enjoin public officers or a public commission from a commission of acts in excess of legal authority which contemplates the expenditure of public money."

Tierman v City of Cincinnati, 18 N.P. (N.S.), 145.

**7 Ohio Jurisprudence, 629 and notes.** Annotations under §486-29 GC.

**Elyria Gas & Water Company v City of Elyria, 57 Oh St 374.**

**Weiss v Keifer, 3 Oh Ap, 426.**

Counsel for defendant, the Civil Service Commission devote several pages of their brief (pages 3 to 9 inclusive) to a discussion of this question. They set up as their premise the following:

"A taxpayers' action is not the appropriate remedy for correcting or preventing illegal or unauthorized actions on the part of the Civil Service Commission."

While Ohio courts have not given expression to the above language yet it is highly probable in a proper case such language could be adopted. The action in the instant case is to enjoin the unlawful withdrawal of money from the County Treasury of Madison County. It is not a suit for correction or prevention of illegal or unauthorized action on the part of the Civil Service Commission.

The relator seeks his injunction on the ground that the Superintendent and Matron have no authority to draw a salary from the county. Of course, the question necessarily draws into it a determination of the legality of the appointment. To hold that a taxpayer could not restrain payment of compensation to persons holding employment illegally under pretended civil service classification would be abrogating the plain language of §486-29 GC. Many New York cases are cited in plaintiff's brief, but none of the cases so far as we can find, is identical to the instant case. They do support the claim that under a statute even broader than §486-29 GC a taxpayer may not bring an action to prevent illegal or unauthorized action on the part of the Civil Service Commission. In the instant case, we are not dealing with that question. We are only concerned in the determination of whether or not a salary paid to the Superintendent and Matron is illegal and therefore should be enjoined.

The fact that it will be necessary to determine the acts of the Civil Service Commission illegal and void in order to sustain the suit is only an incident in the determination of an issuable fact.

### (3.)
MAY THE CIVIL SERVICE BE JOINED IN THE ACTION IN MADISON COUNTY, OHIO?

From the outset we are of the opinion that the Civil Service Commission of Ohio is not a necessary party to a determination of the relief sought, but we think that it is a proper party. The above observation is based on the fact that the gist of the action is to prevent money from being illegally drawn out of the County Treasury of Madison County. The only relief that is sought against the Ohio Civil Service Commission is to enjoin it from certifying a payroll. §486-21 GC of the Civil Service Laws provides for such certification for any appointee under the State Civil Service Law. If in a final determination of the case the court should determine that the payment

of salary vouchers to the Superintendent and Matron were illegal and should issue an injunction order against the County Auditor from issuing vouchers on the County Treasurer, this would accomplish the full relief desired. The Civil Service Commission might continue to certify a payroll but the order of the court enjoining the issuing of the vouchers would be controlling.

The Civil Service Commission of Ohio is a proper party to the action just as is the Board of Trustees of the Children's Home of Madison County, although no relief at all is asked against the trustees of the Children's Home. A determination of whether or not the salary paid to Mr. and Mrs. Kilgore, is legal or illegal necessarily involves a full and complete examination of the proceedings of the Civil Service Commission of Ohio and the trustees of the Madison County Children's Home under which the pretended appointment is made.

If the appointment is illegal any taxpayer has a right to enjoin them and the fact that the relator is a taxpayer is sufficient basic grounds to bring the action and if the payment is illegal no other or further injury or damage need be shown.

It is urged that the civil service commission of Ohio cannot be sued any place except in Franklin County.

Sec 486-6 GC of the civil service law provides that the State Commission shall maintain suitable offices in the City of Columbus, etc. This section sufficiently prescribes the situs of the company as Franklin County. §11271 GC so far as applicable reads as follows:

"Actions for the following causes must be brought in the county where the cause of action or part thereof arose. * * *

(2) against a public officer for an act done by him in virtue of or under color of his office or in neglect of his official duty."

The case of **Meeker v Scudder, 108 Oh St, 423** is cited. Neither the section quoted nor the decision by the Supreme Court touch the question as to whether or not the Civil Service Commission of Ohio might be joined with other defendants where the action was rightfully brought in some county other than that of the situs of the commission.

It is a general rule that individuals must be sued in the county of their residence. This rule has its exceptions and where the action is rightfully brought against one de- fendant other non-resident defendants may be joined, where necessary to the complete adjudication of the question involved. This exception to the rule is very fully provided for by legislative enactment. Under a proper case we know of no statutory rule prohibiting the joining of State officers with other defendants.

Sec 11271 GC provides that actions against public officers for an act done by him in virtue of or under color of his office or for neglect of his official duty must be brought in the county where the cause of action arose.

As heretofore indicated the gist of the action in the instant case is the claimed illegal withdrawal of money from the County Treasury of Madison County. It necessarily follows if a legal cause of action is stated it is in Madison County. The action of the Civil Service Commission in certifying a payroll to the Auditor of Madison County is an act within that county regardless of where the communication may be drafted or signed. In the case of **State ex Belknap v Board of Deputy State Supervisors of Elections, 3 Oh Ap, 190,** the action was brought in Jefferson County and the Secretary of State was joined as party defendant. This was an action in mandamus to compel the Board of Deputy State Supervisors of Elections to issue to relator a certificate of election to the office of Probate Judge of Jefferson County, Ohio to which position he had been elected. The Deputy State Supervisor of Elections refused to issue to him a certificate of election by reason of the direction of the Secretary of State. It was claimed that the relator had failed to file a proper statement of expenditures and it was for that reason that the direction was made to withhold the certificate of election. The defendant, Charles H. Graves, Secretary of State, interposed defense that the cause of action against him did not arise in Jefferson County and that he could not be properly joined in Jefferson County. The court called attention to §11255 GC which provides:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to the complete determination or settlement of the question involved herein."

We think it might have been said in that case that the defendant, Graves, was not a necessary party but he was a proper party.

The order could have been made against the Board of Deputy State Supervisors to issue the certificate of election. Following this a further action might have been necessary against the Secretary of State. By reason thereof he comes within the classification as a necessary party to the complete determination and settlement of the question involved. This principle applies to the instant case.

### (4.)
### WAS THE APPOINTMENT ILLEGAL?
**Article 15, §10 of the Ohio Constitution** reads as follows:

"Appointment and promotion in the Civil Service of the State, several counties, and cities shall be made according to merit and fitness to be ascertained as far as practicable by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

It is very apparent that the provisions of the constitution are not self-enacting. They can only be brought into operation through legislative enactment. The legislative enactment must keep within the provisions of the constitution by providing for appointments and promotions according to merit and fitness to be ascertained as far as practicable by competitive examination.

A civil service law has been enacted and is found in the chapter of the Code so designated and is numbered §§486-1 to 486-31 GC inclusive. §486-7 GC authorizes the commission to prescribe, amend and enforce administrative rules for the purpose of carrying out and making effectual the provisions of the act. Other provisions are made in this section designating the powers and duties of a commission.

Rules and regulations have been regularly adopted by the commission. §486-9 GC provides for the adoption of rules and classification of offices, positions and employment in the civil service of the State and several counties thereof. §486-10 GC provides for the examination of applicants. §486-11 GC, the form and nature of a written application to be filed previous to the examination. §486-12 GC provides for the preparation by the Civil Service Commission of Ohio of the eligible lists following the examination. §486-13 GC in part reads as follows:

"The head of a department, officer or institution in which a position in the classified service is to be filled shall notify the commission of the fact and the commission shall except as provided in §§486-14 and 486-15 GC certify to the appointing officer thereof the names and addresses of the three candidates standing highest on the eligible list for the class or grade to which said position belongs."

In the instant case following the examination and on request of the trustees of the Children's Home the commission certified as eligible for appointment the three individuals standing highest on the eligible list. This list did not include the name of the defendants, Kilgores, for the reason that they, Kilgores, stood seventh in the list. There is a provision in the Code and in the rules and regulations of the commission under which an individual once certified may be withdrawn from such eligible list, but in the instant case neither of the three were withdrawn through favor of the Code or any of the rules and regulations.

The mechanics through which a second eligible list was certified has been referred to in detail under the discussion of facts and need not be repeated at this time.

It is obvious that the real purpose in securing the second list was to procure the appointment of Mr. and Mrs. Kilgore as Superintendent and Matron, although the pretended reason was to secure a list in which the applicants did not have a family of small children. The evidence discloses that Nos. 2 and 3 on the first certification neither had a family of small children and therefore met this desired requirement.

This brings us directly to the proposition as to whether or not the Civil Service Commission under the facts of the case together with the existing law and regulations could legally make a certification of a second list. We have no difficulty in arriving at the conclusion that the act of the Civil Service in attempting to certify a second list was illegal and void.

They had exhausted their power when they made their first certification and this could not be changed or modified except as provided by law or the existing rules and regulations. The commissions action was arbitrary and under the law just as illegal as though they had attempted to certify a resident of the State of New York, without having taken an examination or being certified.

The question is raised that the court has no right to interfere with the discretion of the commission. With this principle we agree, but when the commission goes beyond its power it cannot be said to be an

exercise of discretion. Under such condition the act is illegal and void. Tierman v City of Cincinnati, 18 N.P. (N.S.), 145; **State ex Weiss et v Keifer, 3 Oh Ap, 426.**

### (5.)

### MAY THE RELATOR HAVE RELIEF THROUGH INJUNCTION?

This question is really answered through the determination of the other subheads numbered 1, 2, 3 and 4. We may say at this point that it is an extremely doubtful proposition as to whether or not the matron of the Children's Home comes under the classified service. §§3084 and 3085 GC in substance provide that the matron shall be employed by the superintendent, etc. This identical question was under consideration in the case of **State ex Hart v Board of Commissioners of Hocking County, 101 Oh St, 336.** The court there held that the matron under a similar section of the statute was not in the classified service. We do not see that this question can make any difference in the instant case since the defendant, Kilgore stood seventh, whether considered alone or in combination with the grade of his wife. Under the facts in the instant case it appears that Mr. and Mrs. Kilgore are very capable and efficient employees of the Children's Home and probably have a fitting adaptability for that employment. It is probable that none of the successful applicants could have made a better record at the institution than has been made by them. It even might be questioned if it is possible to approach this record. If it were possible for us to give consideration to the qualifications of Mr. and Mrs. Kilgore we would be more than pleased to continue them in their employment, but as we view it the law is very clearly against the legality of their appointment.

Sec 486-29 GC provides that any injunction granted or made shall be prospective only and shall not affect payments already made or due such person or proper officers.

It is therefore determined that payments may be made to Mr. and Mrs. Kilgore up to the time of entry. With the above exception injunction will be allowed as prayed for. Demurrers and motion overruled so as to save record. Exceptions will be allowed.

HORNBECK, PJ, and KUNKLE, J, concur.

### ON MOTION FOR REHEARING

Decided June 14, 1933

BY THE COURT

The above entitled cause is now being determined on motion for rehearing by counsel for the trustees of the Madison County Children's Home. The first ground of motion is based on paragraph in the court's opinion on page 5. Counsel in the comments following stress the inference that the court stated that the trustees made request for certification. The point that the court intended to make was that the trustees did not ask the Commission to promulgate a special order making ineligible applicants having small children. We might at this time add that since the Commission had no such general order it is hardly probable that they would make a special order unless their attention was called to it by the trustees. The same observation is applicable to a reference to page 14 of the opinion.

The mechanics leading up to what was done is not so material, but the substance is that which was done.

On the second proposition would say that we had under consideration the question raised that the matron of the Children's Home is not in the classified service. We still hold to the view that the examination conducted by the Civil Service will not be entirely void by reason of that fact.

The motion for rehearing will be overruled.