DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant, the City of Green Board of Zoning Appeals ("BZA"), appeals the order of the Summit County Court of Common Pleas reversing the BZA's denial of a variance to plaintiff-appellee, Golfview Gardens Limited Partnership ("Golfview"). We affirm.
Golfview is the owner of a 9.6 acre parcel of real property located within a PD-1 Planned Development District in the City of Green. Principal permitted uses of property within a PD-1 District include single-family dwellings, two-family dwellings, townhouses, garden apartments, and mid-rise apartment buildings. Green Codified Ordinance 1270.03(a), as amended in 1989, requires that "[t]he gross area of a tract of land proposed to be developed in a PD-1 Planned Development District shall be a minimum of fifteen acres."
PD-1 Districts in Green have been utilized since 1969 and have been developed with multi-family, single-family, and recreational uses. Most of the undeveloped property in the PD-1 District at issue presently consists of parcels of less than 15 acres.
In 1994, Golfview presented a proposal to Green for the development of a 76-unit multi-family dwelling on its 9.6 acre parcel. Initially, the Green Planning and Zoning Commission conditionally approved the project, but the city placed final approval of the project "on hold" pending an opinion of the city law director regarding minimum acreage requirements for developments within the PD-1 District.
On August 30, 1995, the law director determined that a proposed development in a PD-1 District required a minimum 15-acre undeveloped parcel. In order to utilize its parcel, Golfview applied to the BZA for an area variance, explaining that "the property would be impossible to develop" and that "[i]f a variance is not granted this parcel is unusable."
Following a hearing on the variance, the BZA issued its decision "to deny the variance as requested due to contingent neighbors not agreeing to it as stated." Golfview appealed that decision to the common pleas court, pursuant to R.C. Chapter 2506.
The common pleas court reversed the decision of the BZA and granted a variance to Golfview "for the proposed project," finding that "there was not a preponderance of reliable, probative and substantial evidence supporting the board's denial of the requested variance and that such denial was arbitrary, capricious, or unreasonable."
The BZA now appeals, asserting two assignments of error: (1) that the trial court erred by finding that the decision of the BZA was arbitrary, capricious or unreasonable and unsupported by a preponderance of reliable, probative and substantial evidence; and (2) that the trial court abused its discretion in finding that Golfview was entitled to a variance. Because these assignments of error are interrelated, we shall discuss them together.
When reviewing an administrative decision, a common pleas court acts in a "limited appellate capacity." Univ. Hosp., Univ.of Cincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339, 343; Diversified Benefit Plans Agency,Inc. v. Duryee (1995), 101 Ohio App.3d 495, 499. R.C. 2506.04
addresses the scope of the common pleas court's review of an administrative decision and provides:
 The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from[.]
Decisions of a board of zoning appeals are presumed to be valid. C. Miller Chevrolet, Inc. v. Willoughby Hills (1974),38 Ohio St.2d 298, paragraph two of the syllabus. If there is in the record a preponderance of reliable, probative, and substantial evidence to support the administrative decision, the common pleas court must affirm. Dudukovich v. Lorain Metro. Hous. Auth.
(1979), 58 Ohio St.2d 202, 207.
An appellate court's review of the common pleas court's decision in an administrative matter is even more limited and requires the appellate court "to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34.
A property owner applying for an area variance must demonstrate "practical difficulties" in complying with a zoning regulation. Duncan v. Middlefield (1986), 23 Ohio St.3d 83,85-86, certiorari denied, 479 U.S. 986, 93 L.Ed.2d 579. "[A] property owner encounters `practical difficulties' whenever an area zoning requirement (e.g., frontage, setback, height) unreasonably deprives him of a permitted use of his property."Id. at 86; Barensfeld v. Coventry Twp. Bd. of Zoning Appeals
(Jan. 17, 1996), Summit App. No. 17308, unreported, at 5.
The Ohio Supreme Court has established seven non-exclusive factors to be considered in determining whether a landowner seeking an area variance has encountered practical difficulties in the use of his property:
 (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.
Duncan v. Middlefield, 23 Ohio St.3d 83, at the syllabus. No single factor controls in the determination of practical difficulties; the inquiry should focus on the spirit rather than the strict letter of the zoning ordinance so that substantial justice is done. Id. at 86. This requires that a board of zoning appeals or the reviewing court weigh the competing interests of the property owner and the community. Id. "When an area variance is sought, * * * the property owner is required to show that the application of an area zoning requirement to his property is inequitable." Id.
As to the first Duncan factor, whether the property will yield a reasonable return or whether it can be beneficially used without the variance, all of the evidence in the record of this case establishes that the property cannot be used for any purpose without a variance. Despite the fact that the PD-1 District permits a variety of uses, including single-family housing as an example, Golfview could not build even a single-family house on its 9.8 acre parcel without an area variance.
As to the second and third Duncan factors, although the variance requested by Golfview is substantial, there is no evidence in the record that the essential character of the neighborhood would be substantially altered or that adjoining properties would suffer a substantial detriment if the variance is granted. The record establishes that this particular PD-1 District presently includes developments on parcels of less than 15 acres. Although a few neighboring residents voiced their opposition to the planned use of the land by Golfview and raised health and safety issues, the proposed use of the property is not at issue before this court.
As to the fourth Duncan factor, impact on the delivery of government services, concerns were raised at the hearing about delivery of water and the effect of the proposed development on existing gas lines. These concerns were not supported by the evidence. "Legal matters are determined by facts, not by belief or desires." Libis v. Bd. of Zoning Appeals (1972), 33 Ohio App.3d 94,100.
With respect to the fifth Duncan factor, whether the owner purchased the property with knowledge of the zoning restriction, the record establishes that Golfview purchased the property in 1993, four years after the zoning amendment in question was enacted. However, a representative of Golfview testified that "[t]here was never any issue raised as to the acreage issue for the development" and that Golfview had been given initial approval for its project by the city, subject to the correction of "minor items" such as fencing. The first time the acreage issue was raised by city authorities was in the summer of 1995.
This court considered the same 1989 Green zoning amendment at issue here in the case of BMR Development Corp. v. Green (Aug. 20, 1997), Summit App. No. 18173, unreported, at 8-9, and noted:
 Even though a purchaser of real property is generally presumed to have knowledge of zoning regulations, Avon v. Samanich (Aug. 23, 1995), Lorain App. No. 95CA006042, unreported, at 13, citing State v. Parker (1994), 68 Ohio St.3d 283, 286, the record discloses confusion even among city officials as to whether the 15-acre minimum was to apply to new development in existing PD-1 Districts. The city's law director determined that the 15-acre minimum did apply in such circumstances. However, letters in the record from the city's zoning inspector and from persons involved in revising the zoning regulations in 1989 indicated that the minimum acreage requirement was intended only for the creation of new PD-1 Districts and was not intended to apply to parcels in existing PD-1 Districts. (Emphasis sic.)
That same confusion among city officials is evident in the case before us.
As to the sixth Duncan factor, whether the property owner's predicament feasibly can be obviated through some method other than a variance, Golfview demonstrated that there was no adjacent land which could be acquired to meet the 15-acre minimum and that they could not use the property at all without the variance.
Finally, as to whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance, the record demonstrates that other developments within the PD-1 district are on parcels of less than 15 acres.
In light of the foregoing, we find that the decision of the common pleas court is supported by a preponderance of reliable, probative, and substantial evidence but only to the extent it reversed the BZA's decision and granted Golfview a variance. To the extent the common pleas court granted the variance "for the proposed project," that issue was not properly before the court. As we emphasized in BMR Development v. Green, id., at. 9-10, the area variance at issue does not decide any questions of use, or determine other considerations within the purview of the city, relative to the proposed development:
 [T]he only issue before the BZA, and before the court of common pleas and this court for review, was whether the BZA was correct in denying an area variance in light of the evidence before it. The BZA was not asked to decide whether BMR's proposed use of the property was proper.
 Accordingly, in reversing the decision of the BZA, the common pleas court decided only that the BZA's decision to deny the variance was not supported by a preponderance of the evidence because appellees had demonstrated that they would experience practical difficulties in using their property for any purpose without a variance from the 15-acre minimum. Neither the decision of the common pleas court, nor this court's decision, obviates the necessity of appellees returning to the city's Planning Commission to resume the approval process.
BZA's assignments of error are overruled. The decision of the trial court is affirmed to the extent set forth in this opinion.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
MILLIGAN, J. CONCURS
(Milligan, J., retired Judge of the Fifth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)